IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

JESUS REYES,

    *Defendant.*

Case No. 15-10119-01-EFM

**MEMORANDUM AND ORDER**

In the middle of the night, on an empty street, Defendant Jesus Reyes failed to activate his turn signal more than 100 feet before turning. Reyes was pulled over, and what began as an innocuous traffic violation ended in an arrest for federal drug and gun charges. Troubled by the events leading up to his arrest, Reyes moves to suppress the Government's evidence. He argues that the evidence against him was obtained in violation of his Fourth Amendment and *Miranda* rights. The Court agrees that the officers committed a *Miranda* violation, but finds that suppression of the physical fruits of the violation is unwarranted. Accordingly, the Court denies Reyes' motions to suppress (Docs. 26, 27, and 42).

**I.    Factual and Procedural Background**

Officers Christopher Hornberger and Jared Henry of the Wichita Police Department received a tip that drug activity had been occurring at a Wichita duplex. On May 28, 2015,

Officer Hornberger heard reports that a Hispanic male was dealing drugs from that same duplex. The following day, the officers parked near that duplex and observed a white SUV in the driveway. Eventually, the SUV backed out of the driveway and left the duplex. The officers followed. They admitted that they were hoping the driver would commit a traffic violation so that they could investigate the reports of drug activity. After a short time, the driver of the SUV activated his turn signal and executed a right turn. Officer Hornberger estimated that the SUV was 20 feet away from the intersection when the driver activated the turn signal. Officer Henry estimated that turn signal was activated 50 feet from the intersection. In any event, the officers executed a traffic stop for failing to signal 100 feet before turning, as required by Kan. Stat. Ann. § 8-1548 and Wichita City Ordinance § 11.28.040(b).

The SUV was already stopped when Officer Hornberger activated the emergency lights, so the officers exited their vehicle. But then the SUV slowly rolled down the road and pulled into a parking lot before coming to a complete stop. Surprised by the driver's actions, the officers got back into their cruiser and approached the SUV. Reyes was revealed as the driver of the SUV. The officers ordered Reyes out of the vehicle and patted him down for weapons. They then asked for Reyes' driver's license, and he responded that it was suspended. At that point, Reyes was taken into custody for driving on a suspended license. Officer Hornberger then asked Reyes for consent to search the SUV, which Reyes denied. As a result, Officer Henry radioed for a canine unit to come sniff the vehicle for drugs. Around this time, Reyes asked the officers if his girlfriend could come take the car. Upon hearing this question, Officer Henry said something to the effect of "you seem pretty nervous about getting the car out of there, makes me think that there's something illegal in the car." In response, Reyes told Officer Henry that there

was a "blunt" on the floorboard. Reyes had not yet been advised of any of his *Miranda* rights. After Reyes made this statement, the officers called off the previously-requested canine unit.

Based on Reyes' statement, Officer Henry looked through the passenger window and observed a brown-rolled cigarette on the floorboard that he believed was the blunt Reyes had mentioned. Officer Henry then entered the SUV, confirmed that the cigarette contained marijuana, and searched the rest of the vehicle. Inside the vehicle, Officer Henry found two firearms and two bags containing methamphetamine.

Reyes is now charged with being a felon in possession of a firearm and possession of methamphetamine with the intent to sell. He moves to suppress the Government's evidence, arguing that the car stop and search violated his Fourth Amendment rights. He also argues that the physical evidence recovered from the search of his SUV should be suppressed as fruits of a *Miranda* violation.

## II.   Analysis

### A. Car Stop

Reyes argues that his Fourth Amendment rights were violated because the traffic stop was unreasonable. Accordingly, he argues that all evidence obtained as a result of the stop should be suppressed. A traffic stop is a seizure under the Fourth Amendment, and thus, is only constitutional if it is reasonable.[1] And the law is well settled that a traffic stop is justified when police have probable cause to believe a traffic violation has occurred.[2] The Court's only inquiry is whether the officers had reasonable suspicion that Reyes violated any applicable traffic or

---

[1] *United States v. Callarman*, 273 F.3d 1284, 1286 (10th Cir. 2001) (citing *Delware v. Prouse¸* 440 U.S. 648, 653 (1979)).

[2] *Whren v. United States*, 517 U.S. 806, 810 (1996).

equipment regulations.[3]  As long as the officers can articulate specific facts that give rise to such a violation, the stop is justified.[4]  The propriety of a stop does not depend on whether the suspect is actually guilty of committing a traffic offense; rather, the relevant question is whether it was reasonable for the officers to believe the offense had been committed.[5]

Both officers testified that based on their observations, Reyes failed to signal more than 100 feet before he made a right turn.  They had reasonable, articulable suspicion to believe Reyes had violated Kan. Stat. Ann. § 8-1548 and Wichita City Ordinance § 11.28.040(b).  Reyes places great emphasis in his argument that the turn signal violation was merely a pretext.  Indeed, Officer Henry admitted as much on the stand.  But the pretext argument is no grounds for suppression.  It is well settled that the constitutional reasonableness of a traffic stop does not depend on an officer's actual motivations.[6]  The inquiry is entirely objective, and the officers had an objectively reasonable articulable suspicion that Reyes committed a turn signal violation.  So at its inception, the traffic stop was justified.

The officers were also justified in ordering Reyes to step out of the vehicle.[7]  They were permitted to ask Reyes for his driver's license.[8]  And once it was clear that Reyes was driving on

---

[3] *United States v. Eckhart*, 569 F.3d 1263, 1271 (10th Cir. 2009) (citing *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995)).

[4] *Id.*

[5] *United States v. Cashman*, 216 F.3d 582, 587 (10th Cir. 2000) (citing *United States v. Smith*, 80 F.3d 215, 219 (7th Cir 1996)).

[6] *Whren*, 517 U.S. at 813.

[7] *United States v. Hill*, 60 F.3d 672, 681-82 (10th Cir. 1995) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109-11 (1977)).

[8] *United States v. Thompson*, 591 F. App'x 652, 656-57 (10th Cir. 2014) (noting that an officer may request a driver's license and registration, run a computer check, and issue citations while conducting a routine traffic stop).

a suspended license, the officers were justified in taking him into custody for that offense. The traffic stop and subsequent detention were reasonable and did not violate any of Reyes' rights.

## B. Miranda Violation

After Reyes was taken into custody, his car was searched. Officer Henry had probable cause to search the vehicle because Reyes admitted that there was a blunt in the car. Reyes argues that the evidence recovered from the search should be suppressed because probable cause to search arose from an illegally obtained statement. Reyes contends that his statement was the result of a custodial interrogation before he was advised of his *Miranda* rights. And so Reyes argues that the evidence that was recovered from the search is fruit of the poisonous tree.

The Court agrees with Reyes that Officer Henry violated *Miranda* in this case. Any confession that is obtained during a custodial interrogation cannot be used unless the Government can demonstrate that the suspect was informed of his *Miranda* rights, including the right to remain silent.[9] There is no dispute that Reyes had not been advised of his *Miranda* rights and was in custody at the time he made the challenged statement. Therefore, the question is whether this statement was the result of an interrogation.

*Miranda* covers more than just questions. "*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning *or its functional equivalent*."[10] Interrogation refers not only to questioning, "but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating

---

[9] *United States v. Chee*, 514 F.3d 1106, 1112 (10th Cir. 2008) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).

[10] *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980) (emphasis added).

response."[11] This inquiry primarily focuses on the perceptions of the suspect, and not the intent of the police.[12] The Tenth Circuit has reiterated that an interrogation can occur without the use of questions.[13] One type of comment that has been explicitly recognized as interrogation is a police officer's attempt to posit the guilt of the suspect.[14] A court is more likely to find that an interrogation occurred when the officer makes an accusatory statement that is unprovoked by the suspect.[15] On the other hand, a court is less likely to find that an interrogation occurred when the officer is simply responding to questions advanced by the suspect.[16] Officer Henry's statement that he believed Reyes had something illegal in the SUV is certainly accusatory. He even testified that his statement could be taken as accusatory in nature. Officer Henry's statement was not made in response to a question posed by Reyes; it was more or less unprovoked. By positing Reyes' guilt, Officer Henry's statement was reasonably likely to elicit an incriminating response. As such, it was an interrogation in violation of *Miranda*.

However, Officer Henry's *Miranda* violation does not automatically trigger suppression of the physical evidence in this case. In *United States v. Patane*,[17] the Supreme Court made it clear that the failure to provide *Miranda* warnings is not a violation of a suspect's constitutional

---

[11] *Id.* at 301.

[12] *Id.*

[13] *United States v. Rambo*, 365 F.3d 906, 909 (10th Cir. 2004).

[14] *Id.* (citing *Innis*, 446 U.S. at 299); *cf. United States v. De La Luz Gallegos*, 738 F.2d 378, 380-81 (10th Cir. 1984) (finding that an interrogation had not occurred when the officer did not make any accusatory statements to the suspect).

[15] *United States v. Nelson*, 450 F.3d 1201, 1211 (10th Cir. 2006).

[16] *Id.*

[17] 542 U.S. 630 (2004).

rights.[18]  The Constitution is only violated upon the admission of the improperly elicited statements at trial.[19]  Thus, the exclusion of such statements is a complete and sufficient remedy for *Miranda* violations.[20]  Of course, Reyes' statement about having a blunt in his SUV cannot be used against him at trial.  But with respect to an officer's failure to provide *Miranda* warnings, there is "no reason to apply the 'fruit of the poisonous tree' doctrine."[21]  And so "physical evidence that is the fruit of a voluntary statement should not be suppressed even if the statement was elicited without a *Miranda* warning."[22]  The law only requires the exclusion of coerced statements.[23]  Even though Officer Henry violated *Miranda* by interrogating Reyes while he was in custody, there is no evidence that Reyes was coerced.[24]  Accordingly, the Court will not suppress the physical fruits of his voluntary, albeit non-*Mirandized*, statement.[25]

## C. Inevitable Discovery

Even if Reyes' statement had been coerced, the resulting physical evidence would still be admissible under the doctrine of inevitable discovery.  Under the doctrine of inevitable discovery, evidence found as a result of illegal police conduct that inevitably would have been

---

[18] *Id.* at 641.

[19] *Id.*

[20] *Id.* at 641-42.

[21] *Id.* at 642.

[22] *United States v. Phillips*, 468 F.3d 1264, 1266 (10th Cir.2006) (citing *Patane*, 542 U.S. at 634).

[23] *Patane*, 542 U.S. at 643 ("[T]he Court requires the exclusion of the physical fruit of actually coerced statements.").

[24] *United States v. Short*, 947 F.2d 1445, 1449 (10th Cir. 1991) ("Incriminating statements obtained by government acts, threats, or promises that permit the defendant's will to be overborne are coerced confessions.").

[25] *United States v. Lara-Garcia*, 478 F.3d 1231, 1235 (10th Cir. 2007) (quoting *Phillips*, 468 F.3d at 1265) ("[P]hysical evidence obtained as a fruit of a defendant's *voluntary, i.e. uncoerced, statement* to a police officer is admissible at trial 'regardless of whether the officer gave the defendant *Miranda* warnings.' ") (emphasis added).

lawfully discovered absent the illegal conduct need not be suppressed.[26]  The Government bears the burden of proving by a preponderance of evidence that the evidence would have been discovered without the unlawful conduct.[27]  The exception applies "whenever an independent investigation would have inevitably led to discovery of the evidence."[28]  "The fact that another investigation was already underway when a constitutional violation occurred is strong proof that it was independent of the illegal investigation."[29]

Here, a canine unit had been called to the scene before Reyes was improperly interrogated.  Under the circumstances, the dog-sniff of the car would have been lawful.[30]  Therefore, an independent, lawful investigation was under way.  The Eighth Circuit decided a similar case in *United States v. Hammons*.[31]  In *Hammons*, a police officer planned on calling a canine to sniff a suspect's car.[32]  But before he could call the dog, an illegal search revealed contraband.[33]  The Eighth Circuit held that suppression of the evidence was inappropriate because there was a substantial, alternative line of investigation underway that would have led to

---

[26] *United States v. Larsen*, 127 F.3d 984, 986 (10th Cir. 1997).

[27] *United States v. Christy*, 739 F.3d 534, 540 (10th Cir. 2014).

[28] *Larsen*, 127 F.3d at 986.

[29] *Id.* at 987.

[30] A traffic stop may be extended if the officers have an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring, and a dog sniff is not a search that implicates the Fourth Amendment. *United States v. Moore*, 795 F.3d 1224, 1228 (10th Cir. 2015); *United States v. Engles*, 481 F.3d 1243, 1245-46 (10th Cir. 2007).  The officers knew that Reyes had been driving on a suspended license and he had just come from an area in which drug activity had been reported, so the extension of the stop was not unreasonable.  And the dog sniff, which is not a search, would have given rise to probable cause to lawfully search the SUV.  Neither the extension of the traffic stop nor the dog sniff would have violated any of Reyes' rights.

[31] 152 F.3d 1025 (8th Cir. 1998).

[32] *Id.* at 1030.

[33] *Id.*

inevitable discovery of the contraband.[34] There is even more evidence of a substantial, independent investigation here. In *Hammons*, the officer merely mentioned that he was going to call for a canine. In this case, the canine was already on the way and had to be called off by the officers. Even if Officer Henry had never elicited an incriminating statement from Reyes, the canine unit would have arrived on scene. There is nothing more the officers would have had to do to bring about this alternative investigation. The dog almost certainly would have discovered that the SUV contained both marijuana and methamphetamine, and the contraband would have lawfully discovered. Accordingly, the doctrine of inevitable discovery applies and Reyes' motions to suppress are denied.

### III. Conclusion

The officers reasonably believed that Reyes committed a traffic violation, and therefore, the traffic stop was lawful. By positing Reyes guilt, Officer Henry subjected Reyes to a custodial interrogation without advising him of his *Miranda* rights. But suppression of physical fruits is not a remedy for a *Miranda* violation. Furthermore, because a canine was en route to conduct a legal sniff of Reyes' SUV, the contraband would have been inevitably discovered. Thus, the Court will not suppress the evidence from the SUV, and Reyes' motions to suppress are denied.

---

[34] *Id.*

**IT IS THEREFORE ORDERED** that Reyes' Motions to Suppress (Docs. 26, 27, and 42) are hereby **DENIED.**

**IT IS SO ORDERED**.

Dated this 15th day of August, 2016.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE